UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARDELL D. HOUSTON, | ) | Case No. 1:21-cv-2009 |
| | ) | |
| Petitioner, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Darrell A. Clay |
| | ) | |
| RONALD ERDOS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

# OPINION AND ORDER

After a bench trial in the State trial court, Petitioner Cardell D. Houston was convicted on two counts of murder and two counts of felonious assault. The State trial court merged the offenses for purposes of sentencing and imposed a sentence of 15 years to life, plus a three-year firearm specification to be served consecutively. Mr. Houston filed a petition for a writ of habeas corpus, asserting ineffective assistance of trial counsel and an abuse of discretion on the part of the State trial court when it failed to hold a hearing on his motion for postconviction relief.

For the reasons that follow, the Court **DENIES** the petition on both grounds. Further, the Court **DECLINES** to issue a certificate of appealability because Petitioner has not shown that reasonable jurists could fairly debate this determination. In other words, in the Court's view, Petitioner has not made a substantial showing of the denial of a constitutional right.

## FACTUAL AND PROCEDURAL BACKGROUND

This petition for a writ of habeas corpus arises from the conviction of Mr. Houston in State court, specifically the Cuyahoga County Court of Common Pleas.

### A. Indictment and Trial

On December 8, 2016, a grand jury indicted Mr. Houston on one count of aggravated murder, two counts of murder, two counts of felonious assault, and one count of illegally possessing a weapon under Sections 2903.01, 2903.02, 2903.11, and 2923.12 of the Ohio Revised Code. (ECF No. 7-1, PageID #124–127.) Mr. Houston waived his right to a trial by jury and proceeded to a bench trial. (*Id.*, PageID #130.) The State trial court found Petitioner guilty on two counts of murder and two counts of felonious assault. (*Id.*, PageID #131.)

At trial, the evidence showed that William Barnes, Jr. was fatally shot while sitting in the front seat of his vehicle. (*Id.*, PageID #217.) Surveillance video from two neighboring homes captured the incident. (*Id.*) The video showed that "the rear passenger placed his left hand on the roof of the Sonata just above the right rear passenger door while leaning with his right arm extended back into the passenger compartment of the vehicle." (*Id.*, PageID #217–18.) In addition to the videotape, an eyewitness testified "to seeing two shots fired through an open door of Barnes' vehicle from the passenger side of the vehicle." (*Id.*, PageID #218.) After the gunshots, the shooter fled "and an object consistent with the appearance of a firearm could be seen in his right hand." (*Id.*) Police also recovered shell casings from a nine-millimeter gun inside the vehicle "and on the sidewalk near the passenger side of the vehicle."

(*Id.*)  Paramedics responded and transported Barnes to the hospital, but he did not survive.  (*Id.*)

Dr. Erica Armstrong, a forensic pathologist who performed the autopsy on Barnes, testified that Barnes sustained five gunshot wounds.  (*Id.*; ECF No. 7-2, PageID #726.)  According to Dr. Armstrong, three of the wounds were "consistent with the state's theory at trial that Barnes was shot by the passenger in the right rear seat of his vehicle."  (ECF No. 7-1, PageID #218–19.)

Another medical examiner testified that Mr. Houston's DNA was found on the roof of the victim's car above the right rear seat.  (*Id.*, PageID #219.)  According to that testimony, Mr. Houston was "the source of the major DNA component obtained from the roof of Barnes' car where the shooter had placed his hand."  (*Id.*)

The State trial court found Petitioner guilty of two counts of murder and two counts of felonious assault, plus a firearm specification.  (*Id.*)  Mr. Houston was sentenced to 15 years to life plus three years consecutive for the firearm specification. Also, the State trial court ran the sentence for the murder conviction consecutive to sentences in four other cases, indicating that running Mr. Houston's sentence consecutive to the other sentences was "'mandatory' under the law."  (*Id.*, PageID #220.)

**B.    Direct Appeal**

On appeal, Mr. Houston raised six assignments of error:  (1) the murder conviction was against the manifest weight of the evidence; (2) his trial counsel was ineffective for failing to challenge as unreliable or seeking to preclude the True Allele™ DNA testing results; (3) the Constitution's Confrontation Clause was

violated; (4) his counsel failed to argue for concurrent sentences; (5) the trial court erred in imposing a mandatory sentence on the failure to comply charge; and (6) the numerous failures of his trial counsel violated his Sixth Amendment right to the effective assistance of counsel. (*Id.*, PageID #156–57.) The State appellate court sustained Mr. Houston's fifth assignment of error, but affirmed in all other respects and remanded for re-sentencing. (*Id.*, PageID #215 & #229.) With respect to ineffective assistance of counsel, the State appellate court rejected the claim, determining that the DNA issue was thoroughly explored on redirect at trial. (*Id.*, PageID #225.) Mr. Houston moved for reconsideration, which the State appellate court denied. (*Id.*, PageID #234 & #244.)

Next, Mr. Houston appealed to the Ohio Supreme Court, again raising ineffective assistance of counsel. (*Id.*, PageID #245.) He argued that counsel failed to "[e]xclude the DNA evidence if possible, and if the DNA could not be excluded, weaken its force." (*Id.*, PageID #253.) Mr. Houston claimed that the State appellate court misapplied *Strickland v. Washington*, 466 U.S. 668 (1984), when it rejected his ineffective assistance claim. (*Id.*, PageID #255–58.) The Ohio Supreme Court declined review. (*Id.*, PageID #260.)

On remand, the trial court sentenced Mr. Houston to consecutive sentences once more. (*Id.*, PageID #261–62.) Mr. Houston did not appeal his new sentence.

C. **Petition for Postconviction Relief**

After the Ohio Supreme Court declined jurisdiction (*id.*, PageID #260), Mr. Houston filed a petition for postconviction relief. (*Id.*, PageID #264.) He argued for "a new trial based on evidence outside the trial record that competent counsel

4

would have obtained and then used to demonstrate that the evidence the State presented did not meaningfully link him to the killing." (*Id.*, PageID #265.) Specifically, Mr. Houston claimed that his attorney was ineffective for failing "to investigate the DNA evidence and the DNA science relevant to his case." (*Id.*, PageID #267.)

Mr. Houston obtained a declaration from a DNA expert that, in Petitioner's view, casts doubt on the only evidence the State had to convict him. (*Id.*, PageID #276.) The declaration explains the science behind mixed DNA samples and gives opinions about the implications of a DNA match in a mixed sample. (*Id.*, PageID #276–80.) The expert acknowledges that he "cannot comprehensively evaluate the results of an STR DNA test without having access to the test's underlying electronic data." (*Id.*, PageID #276.) In Petitioner's view, if the case had been "completely investigated and tried," the State courts would have understood the "limited implications of being a major contributor to a DNA mixture," and Mr. Houston would not have been convicted. (*Id.*, PageID #271.)

The court denied Mr. Houston's post-conviction petition without a hearing. (*Id.*, PageID #311.)

**D.   Appeal of Denial of Postconviction Relief**

Mr. Houston appealed the trial court's denial of his postconviction petition. (*Id.*, PageID #313.) In his brief, Mr. Houston raised a single assignment of error— that the State trial court erroneously denied his petition without a hearing. (*Id.*, PageID #324.) The State appellate court rejected this argument, holding that

5

Mr. Houston did not show a "reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different." (ECF No. 7-1, PageID #364.)

Mr. Houston raised the same argument to the Ohio Supreme Court, but the court declined to accept jurisdiction. (*Id.*, PageID #388.) Also, the Ohio Supreme Court denied his motion for reconsideration. (*Id.*, PageID #399.)

Mr. Houston filed a delayed application to reopen his direct appeal. (*Id.*, PageID #400.) In his motion, Mr. Houston for the first time asserted that his appellate counsel was ineffective. (*Id.*, PageID #401.) He based this claim on appellate counsel's failure to raise two assignments of error on direct appeal, that: (1) trial counsel failed to prepare for trial; and (2) Mr. Houston's convictions were not supported by sufficient evidence. (*Id.*, PageID #403 & #407.) The State appellate court denied Mr. Houston's application. (*Id.*, PageID #424.)

### E. Habeas Petition

On October 22, 2021, Mr. Houston filed a petition for a writ of habeas corpus, asserting two grounds for relief. First, Petitioner argues that trial counsel rendered ineffective assistance by failing to investigate and refute the State's DNA evidence at trial. Second, Petitioner asserts that the State trial court abused its discretion by dismissing his postconviction petition without holding a hearing. (ECF No. 3, PageID #68 & #77.) In addition to the two grounds raised in the petition, Mr. Houston also raises a claim of actual innocence. (ECF No. 3, PageID #68.)

At the time Mr. Houston filed his petition, the proper respondent was Warden Ronald Erdos. Now, the warden is Anthony Davis, making him the proper

6

Respondent. *See* 28 U.S.C. § 2243; Fed. R. Civ. P. 25(d). Petitioner filed a traverse, which the Magistrate Judge treated as timely. (ECF No. 10; Order, March 15, 2023.)

### F.  Delayed Motion for New Trial

After filing the petition for a writ of habeas corpus, Mr. Houston moved for leave to file a delayed motion for new trial pursuant to Rule 33(A)(6) of the Ohio Rules of Criminal Procedure on February 3, 2023. (ECF No. 8; Motion for Leave to File Delayed Motion for New Trial, *State v. Houston*, No. CR-16-611762-A (Feb. 3, 2023).) Petitioner's stated reason for filing was that the State failed to disclose the disciplinary history of the investigating detective, which allegedly would have provided grounds for impeachment. (*Id.*) The State trial court denied that motion. (Order, *State v. Houston*, No. CR-16-611762-A (Apr. 6, 2023).) Petitioner appealed this denial, raising two assignments of error: (1) the State trial court abused its discretion in denying his motion, and (2) the State trial court abused its discretion by denying his motion without holding a hearing. The Eighth District affirmed. *State v. Houston*, No. 112689, 2023 WL 7041993, at *1 (Ohio Ct. App. Oct. 26, 2023).

## GOVERNING LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 governs Mr. Houston's petition for a writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). Under the AEDPA, Petitioner is entitled to habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." *Id.* §§ 2241(c)(3) & 2254(a). Because Petitioner is "in custody" within the Northern District of Ohio and "pursuant

7

to the judgment of a State court," the Court has jurisdiction. 28 U.S.C. §§ 2241(d) & 2254(a).

To be entitled to habeas relief under AEDPA on a "claim that was adjudicated on the merits in State court proceedings," Petitioner must show that the State court decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d). At bottom, the writ tests the fundamental fairness of the State court proceedings resulting in the deprivation of the petitioner's liberty. *See, e.g.*, *Brown v. Allen*, 344 U.S. 443, 463 (1953); *Powell v. Collins*, 332 F.3d 376, 388 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).

"With the AEDPA, Congress limited the source of law for habeas relief to cases decided by the United States Supreme Court." *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000). Habeas courts review the "last explained state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). A State court has adjudicated a claim "on the merits[,]" and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter,* 562 U.S. 86, 99 (2011).

A State court adjudication is "contrary to" Supreme Court precedent under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Williams*, 529 U.S. at 405. "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [the] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Under the statute, an unreasonable application of federal law differs from an incorrect application of federal law. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Williams*, 529 U.S. at 410). A State court adjudication involves "an unreasonable application of" Supreme Court precedent under Section 2254(d)(1) in one of two ways: (1) if the State court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular State prisoner's case; or (2) if the State court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *See Williams*, 529 U.S. at 407.

A State court's determination of the facts is unreasonable under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528–29 (2003). The petitioner bears the burden of rebutting the State court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (quoting § 2254(e)(1)); *see*

9

*also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). "This standard requires the federal courts to give considerable deference to state court decisions." *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). The Supreme Court cautions, that "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." In this way, Section 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems'" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (quoting *Jackson*, 443 U.S. at 333 n.5 (Stevens, J., concurring)). Accordingly, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

Generally, a petitioner must demonstrate that he has "exhaust[ed] all available opportunities to pursue his claim in state court." *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826–27 (6th Cir. 2019). Further, a federal court may not consider a habeas petition unless a State prisoner has presented his claim to the State courts in accordance with their procedural rules. *See Shinn v. Ramirez,*

142 S. Ct. 1718, 1727 (2022). A petitioner may procedurally default a claim by failing to raise it in State court and pursue it through the State's appellate review procedures. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). If State law no longer allows the petitioner to raise or appeal the claim at the time of the habeas petition, the claim is procedurally defaulted. *Id.*; *see also Shinn*, 142 S. Ct. at 1727–28. Procedural default may be excused where a petitioner can show that an external factor prevented him from complying with the procedural rule at issue, through no fault of his own, and that the alleged constitutional violation resulted in actual prejudice. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

## ANALYSIS

In support of his habeas petition, Mr. Houston claims that his conviction violates the Sixth Amendment because trial counsel rendered ineffective assistance and because on post-conviction review the court denied him a hearing to establish his actual innocence. (ECF No. 3, PageID #68, 77.)

### I.  Statute of Limitations

Under the AEDPA, the one-year limitations period runs from the latest of several dates, including the date the judgment becomes final or the date on which the factual predicate of the claims presented could have been discovered through the exercise of reasonable diligence. 28 U.S.C. § 2244(d)(1). Additionally, Petitioner may toll any time that passes while a "properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2).

Without question, Petitioner petitioned for a writ outside the applicable statute of limitations. (ECF No. 3, PageID #65–68; ECF No. 10, PageID #104–109.)

11

The State appellate court affirmed Mr. Houston's murder conviction on August 2, 2018. (ECF No. 7-1, PageID #217–31.) His conviction became final on March 26, 2019—90 days after the Ohio Supreme Court declined to accept jurisdiction on December 26, 2018. (*Id.*, PageID #260.) On that date, the time to seek review at the United States Supreme Court expired.

However, Mr. Houston also filed a petition for postconviction relief before the decision of the Ohio Supreme Court. (*Id.*, PageID #264.) That petition was denied without a hearing. (*Id.*, PageID #311.) Mr. Houston appealed the denial, which was affirmed on November 21, 2019. (*Id.*, PageID #313, 357.) He appealed to the Ohio Supreme Court, but the court declined to accept jurisdiction on March 17, 2020. (*Id.*, PageID #388.) The Ohio Supreme Court also denied his motion for reconsideration on May 12, 2020. (*Id.*, PageID #399.)

Because Mr. Houston properly filed a postconviction petition, the statute of limitations tolled during the pendency of Mr. Houston's petition. See 28 U.S.C. § 2244(d)(2). Instead, the one-year statute of limitations began to run on June 15, 2020—90 days after the Ohio Supreme Court declined jurisdiction. (ECF No. 7-1, PageID #388.) Accordingly, the statute of limitations expired on June 15, 2021. But Mr. Houston filed his petition for habeas corpus on October 22, 2021 (ECF No. 1), months after the expiration of the AEDPA's statute of limitations.

## II.   Actual Innocence

To excuse his untimely petition, Petitioner seeks to pass through the actual innocence gateway of *Schlup v. Delo*, 513 U.S. 298 (1995). Under the AEDPA, the one-year statute of limitations "effectively bars relief absent a showing that the

12

petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court reaffirmed that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *Id*. at 386.

"Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). Credibly proving innocence requires a petitioner to support his allegations with "new reliable evidence . . . that was not presented at trial." *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Schlup,* 513 U.S. at 324). Further, "tenable actual-innocence gateway pleas are rare" and require convincing the district court that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. The evidence presented must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316.

Mr. Houston asserts that he is actually innocent, and that any procedural defect should be waived. (ECF No. 3, PageID #68.) In support, Petitioner relies on a declaration from Dr. Dan Krane, a DNA expert, in which Dr. Krane explains that "a major contributor to a mixture of DNA does not . . . [indicate] more contact or more recent contact than other contributors." (ECF No. 3, PageID #79.) This declaration

13

was introduced to the State trial court on Mr. Houston's initial petition for post-conviction relief in 2018. There, the State trial court summarily denied Mr. Houston's petition, a decision affirmed by the State appellate court. (ECF No. 3, PageID #63–64.)

This declaration fails to support a colorable showing of actual innocence for two reasons. First, the information is not new. It could have been discovered at trial through the exercise of reasonable diligence. Petitioner argues that it, or similar expert evidence, would have been available at trial if not for the ineffective assistance of trial counsel. But the record does not show that Petitioner has carried his burden of establishing ineffective assistance in this regard.

Second, and in any event, the declaration does not get Petitioner through the *Schlup* gateway. In the declaration, Dr. Krane acknowledges that he does not have access to the underlying electronic data, which he explains is often essential to understanding the implications of any DNA result. (*Id.*, PageID #276–80.) Importantly, Dr. Krane does not even attempt to opine on Mr. Houston's guilt or innocence, and the declaration does not question whether the DNA match was false or otherwise unreliable. (*Id.*) The implication of the expert's declaration is that Mr. Houston could have placed his hand on the vehicle at a different time, perhaps long before the murder. Certainly, the State trial court would have had a different appreciation of the evidence and arguments it presents if it had taken the time to have a hearing. Perhaps with further proceedings in State court Mr. Houston could develop evidence that might aid his passage through the *Schlup* gateway. But the

declaration falls short of demonstrating, to the exacting standard required, that Mr. Houston has made a sufficient showing of actual innocence.

## CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding. 28 U.S.C. § 2253(c)(1). Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This means that the petitioner must show that reasonable jurists would find the district court's determination of the relevant constitutional claims debatable or incorrect. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Based on this standard, the Court issues a certificate of appealability. Reasonable jurists could fairly debate whether Petitioner's claim of actual innocence suffices to set aside any procedural defects or bars to review of his petition on the merits. Therefore, the Court issues a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the petition for a writ of habeas corpus (ECF No. 3) but **ISSUES** a certificate of appealability under 28 U.S.C. § 2253(c).

**SO ORDERED.**

Dated: March 4, 2024

                                       J. Philip Calabrese
                                       United States District Judge
                                       Northern District of Ohio